UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| AGNUITY, INC., <br><br>    *Plaintiff*, <br><br>v. <br><br>L. CRAIG SATTERFIELD and NEOTEK, INC., <br><br>    *Defendants*. | § § § § § § § § § § § Civil Action No. 3:24-CV-2068-X |

### MEMORANDUM ORDER AND OPINION

Before the Court are plaintiff Agnuity, Inc.'s (Agnuity) motions for a preliminary injunction (Doc. 29) and for leave to supplement that motion with additional evidence (Doc. 45). After an evidentiary hearing, the Court **GRANTS** Agnuity's motion for leave to supplement but **DENIES** its motion for a preliminary injunction.

### I. Background

This case revolves around two business partners—Eugene Wisakowski and L. Craig Satterfield—and the greenhouse lighting, called Pulsed Xenon Lighting (PXL), they partnered to produce. In 2015, Wisakowski began working with Richard Bostdorff to develop and test a new method of greenhouse lighting. Bostdorff held two patents in the field—U.S. Patent No. 9,756,794 (the '794 patent) and U.S. Patent No. 9,295,201 (the '201 patent)—and operated Fire-Fly One, LLC (FireFly Ohio). Wisakowski and Bostdorff worked on the technology and travelled the country to

research and experiment until Bostdorff suffered a heart attack in 2021, after which he stepped back from the project.

Satterfield joined the project in 2022 after he visited Wisakowski's business, BGP Products, and the two struck up a conversation about Wisakowski's research. Satterfield's company, Neotek, provided LED lighting, and he and Wisakowski decided to go into business together. They incorporated FireFly-One, Inc., which later became Agnuity,[1] and launched a website. Agnuity alleges that Satterfield was Executive Vice President, as well as a founder, director, and shareholder of Agnuity.

Satterfield joined Wisakowski in developing, designing, and promoting the PXL fixtures, and formed significant corporate opportunities for FireFly-One, Inc. by visiting potential customers, attending conferences, and working with manufacturers. He also obtained an Underwriters Laboratories certification for the fixtures and helped draft a pitch deck to attract investors.

In March 2022, Bostdorff licensed the '794 and '201 patents to BGP Products through his company, FireFly Ohio. The licensing agreement required the licensee to make one $150,000 payment upon execution and then a payment each year for the next three years, in addition to a $25 royalty on all units sold using the patents. BGP Products completed only the initial payment in 2022, failing to make the $350,000 payment it owed in May 2023.

---

[1] The Court will refer to this entity as Agnuity throughout, though it went by FireFly-One, Inc., until November 2023.

Agnuity contends that the May 2023 payment was suspended due to its negotiations to purchase the patents from FireFly Ohio outright, and that those negotiations were still ongoing in May 2023. But those negotiations fell apart in June 2023, and BGP Products still failed to make the payment. Agnuity claims that Satterfield represented to Wisakowski in June 2023 that he made the license payment on behalf of Agnuity and BGP Products through his company, Neotek. And Agnuity states that the record reflects Satterfield did make a payment of $150,000. But the parties agree the full payment of $350,000 due under the license agreement was never made.

In September 2023, Bostdorff terminated BGP Products' license agreement, telling Wisakowski that the license payment was never made. And six days after that, Satterfield resigned from his role at Agnuity. Agnuity claims its counsel sent Satterfield a notice of his duties under the PIIAA, but that Satterfield's counsel denied that Satterfield ever executed the agreement. Fire-Fly One, Inc. changed its name to Agnuity in November 2023.

A major business partner informed Wisakowski in October 2023 that it would no longer work with Agnuity since Agnuity had lost the rights to use the patents. Agnuity claims it cannot move forward with commercializing its product because this business partner designed a unique component of the product that no other manufacturer produces. Agnuity also claims it lost the opportunity to attend grower association gatherings and trade shows as it normally would.

In April 2024, Agnuity discovered Neotek was operating a "clone website" at www.fireflyone.com—FireFly-One, Inc.'s website had been www.firefly-one.com. The clone page displays products similar to Agnuity's. Agnuity also discovered that Neotek is using the Facebook page that FireFly-One, Inc. had used, retaining all the same followers. And Agnuity found a magazine listing directing customers to Neotek's clone website.

Finally, Agnuity found that Satterfield sent himself specification sheets and other materials about Agnuity's proprietary information to his separate Neotek email address a month before he resigned. Satterfield also sent confidential draft patent application information and the USPTO certificate for a "FireFly-One" trademark, which FireFly Ohio owned. Agnuity also discovered that Satterfield's wife, who also worked for FireFly-One, Inc., as a marketer, had sent herself various things like marketing strategy materials and the credentials to the FireFly-One, Inc. WordPress account.

### A.     Agnuity's Requested Relief

Agnuity asks the Court to order Satterfield and Neotek to (1) return all documents and information containing Agnuity's proprietary, confidential, and trade secret information; (2) cease disclosing or using Agnuity's proprietary research; (3) cease marketing and selling agriculture lighting in direct competition with Agnuity; (4) cease using the name "FireFly-One" in promotional materials and take down their clone website and all social media accounts in that name; (5) cease using testimonials, videos, and images previously used on FireFly-One, Inc's website;

(6) cease using the terms "Pulsed Xenon Lighting" or "PXL"; (7) cease filing for patents related to PXL technology in Neotek's name; (8) cease promoting the lighting technology to the partners and customers Wisakowsky introduced Satterfield to; (9) place any money or investments Satterfield and Neotek may have raised for the Fire-Fly One brand in a constructive trust; (10) place any patent, trademark, or other intellectual property rights originating from Bostdorff or FireFly Ohio in a constructive trust; and (11) grant Agnuity a royalty-free license to any such patent, trademark, or other intellectual property rights which Satterfield and Neotek now hold.

## II. Legal Standard

Preliminary injunctions serve to preserve the status quo and prevent irreparable harm to the movant so the court can "render a meaningful decision after a trial on the merits."[2] But "the key word is *irreparable*."[3] Preliminary injunctions are proper only where an injury cannot be remedied with monetary relief.[4] "[T]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."[5]

---

[2] *Canal Auth. of Fla. V. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974).

[3] *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecutoriana*, 762 F.2d 464, 472 (5th Cir. 1985) (cleaned up).

[4] *Id.* at 472–73.

[5] *Id.* (cleaned up).

A movant must satisfy four elements to warrant "the extraordinary relief of preliminary injunction."[6] Those are: "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any harm that may result from the injunction to the non-movant; and (4) that the injunction will not undermine the public interest."[7]

### III. Analysis

The dispositive issue for the Court as to this motion is whether Agnuity has the right to use the '201 and '794 patents at all, let alone the right to a royalty-free license plus an injunction against a competitor. It is undisputed that BGP Products never made the $350,000 payment due under the license agreement in May 2023. Agnuity argues Satterfield represented that he paid on BGP Products' behalf, but he did not make the full payment even if it was intended to fulfill BGP Products' obligation. Therefore, without evidence supporting the allegation that Agnuity has legal right to use the patents at all, a preliminary injunction granting it free license to the patents and prohibiting Satterfield and Neotek—who may well have a valid legal right to the patents—from utilizing them is improper.

This touches on both likelihood of success on the merits and irreparable harm. If Agnuity has no right to use the patents, it will not suffer irreparable harm during the pendency of this case.

---

[6] *Canal Auth. of Fla.*, 489 F.2d at 572.

[7] *Valley v. Rapides Parish School Bd.*, 118 F.3d 1047, 1051 (5th Cir. 1997); *see also Winter v. Nat. Res. Def. Couns., Inc.*, 555 U.S. 7, 20 (2008).

True, Agnuity claims Satterfield made a partial payment through Neotek for the licenses and alleges this was Satterfield usurping a corporate opportunity. What's missing is evidence. The evidence before the Court doesn't show which view is more plausible: that Satterfield usurped Agnuity's opportunity or that Agnuity dropped the ball and then Satterfield picked it up. Counsel for Agnuity admitted that they are seeking more discovery on this issue.[8] Unless that discovery preponderates in favor of Satterfield usurping an opportunity of Agnuity, then the Court cannot find that Agnuity has been harmed by Satterfield paying for a license Agnuity didn't pay for.

Therefore, the Court **DENIES** Agnuity's requested preliminary injunction.

## IV. Conclusion

Preliminary injunctions are extraordinary relief. Agnuity presented insufficient evidence to warrant that extraordinary relief. The Court **GRANTS** Agnuity's motion to supplement its request (Doc. 45) but **DENIES** its motion for preliminary injunction (Doc. 29).

**IT IS SO ORDERED** this 1st day of April, 2025.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[8] Transcript of Preliminary Injunction Hearing at 64:10–18, *Agnuity v. Satterfield*, No. 3:24-cv-2068-x (Mar. 24, 2025).